IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KEVIN CERVANTES,

    Plaintiff,                                                                         Case No. 2:25-cv-534-GJF-JHR

LEA COUNTY BOARD OF COUNTY
COMMISSIONERS, MARK GALLEGOS,

    Defendants.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Kevin Cervantes ("Cervantes" or "Plaintiff"), through undersigned counsel, moves for partial summary judgment against Defendants Lea County Board of County Commissioners (the "Board") and Mark Gallegos ("Gallegos") (collectively, "Defendants"). As explained below, Defendants terminated Plaintiff without affording him due process, and in violation of the Board's own policies. Accordingly, summary judgment for Plaintiff on the issue of liability is appropriate.

**I.    INTRODUCTION**

This case presents a narrow legal question based on simple facts: may Lea County terminate regular employees without notice or hearing during post-promotion probationary periods? The answer is no. Under the Lea County Policies and Procedures Manual (the "Manual") and settled due-process law, Plaintiff, a long-time corrections officer, retained a protected property interest in continued employment, even while serving a probationary period for a promotion to sergeant. Yet Defendants terminated him outright without notice or hearing, and without returning him to an available corrections officer position.

This is a simple case with outsized ramifications. If Defendants' position were accepted, the Board could extinguish due process protections for hundreds of County employees through

1

internal reclassification alone. The Manual's "just cause" requirement for termination would be effectively meaningless.

Lea County's policies cannot be reasonably interpreted to contain such a loophole. Thus, Defendants violated Plaintiff's procedural due-process rights and breached the Manual's policies as a matter of law. The Court should grant partial summary judgment on liability, with damages and other remedies saved for another day.

II.    PLAINTIFF'S UNDISPUTED MATERIAL FACTS

This motion relies upon the following undisputed material facts ("UMFs"):

**UMF No. 1:** Plaintiff joined the Lea County Detention Center ("LCDC") as a corrections officer about 10 years ago. *See* Defendants' Answer to Complaint, Dkt. No. 3 (the "Answer") at ¶ 5.

**UMF No. 2:** Upon starting work as a corrections officer, Plaintiff was placed on probationary status for 12 months. Answer at ¶ 5.

**UMF No. 3:** In or around 2016, Plaintiff successfully completed his probationary term, and became a regular, non-probationary employee. Answer at ¶ 6.

**UMF No. 4:** In October 2024, Plaintiff was promoted to the position of sergeant at LCDC, and started a 12-month probationary period for the promoted position. Answer at ¶¶ 7-8.

**UMF No. 5:** In late January of 2025, the Hobbs Police Department filed criminal charges against Plaintiff. Answer at ¶ 11.

**UMF No. 6:** On January 27, 2025, Plaintiff was placed on administrative leave. Ex. 1.[1]

**UMF No. 7:** On February 12, 2025, Plaintiff received a written notice, signed by Gallegos, stating that Lea County had chosen to dismiss Plaintiff from all employment effective immediately. Answer at ¶¶ 2, 11.

---

[1] All exhibits are attached to the contemporaneously filed Declaration of Benjamin Gubernick ("Gubernick Decl.")

2

**UMF No. 8:** The termination notice stated that Plaintiff was a "probationary employee due to [his] promotion to Sergeant in October 2024" and cited Sections 3.1(H) and 3.1(N) of the Manual. Ex. 2.

**UMF No. 9:** Plaintiff was not provided with written notice of contemplated discipline, a pre-disciplinary hearing, or an opportunity to respond. Answer at ¶ 17.

**UMF No. 10:** At all relevant times, LCDC had vacant detention officer positions. Ex. 3.

**UMF No. 11:** The Manual governed Plaintiff's employment. Ex. 4 at Section 1.2(B).

### III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the parties file cross-motions for summary judgment, each motion is considered separately. "[T]he denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

### IV.   ARGUMENT

Procedural due process claims are analyzed under "a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Here, the Manual vested Plaintiff with a protected property interest, and he was deprived of that interest without any semblance of process.

**A. Plaintiff Possessed a Protected Interest in Continued Employment with Lea County.**

**1. The Manual's policies confer property interests on employees who complete their initial probationary periods.**

It is axiomatic that "[p]roperty interests … are not created by the Constitution." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source

3

such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

And under settled law, a written policy that limits a public employer's ability to fire its employees qualifies as such an "independent source." *See e.g.*, *West v. Grand Cnty.*, 967 F.2d 362, 366 (10th Cir. 1992) ("Grand County clearly opted to have its own merit system, as delineated in its Personnel Policies and Procedures manual. Its restrictive discharge policy gave West a property interest in continued employment that could not be curtailed without constitutional protections."); *Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir.1991) ("[I]f a … policy ... restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown." (internal quotations omitted)); *Tonjes v. Park Cnty. Sheriff's Off.*, 300 F. Supp. 3d 1308, 1320 (D. Colo. 2018) (protected property interest where a policies and procedures manual "promises Sheriff's Office employees that it will follow a specific disciplinary process and informs them of the permitted ranges of discipline for various infractions.").

Here, the Manual contains three relevant employment categories:

- **Probationary employees**. "A full-time or part-time probationary employee is an employee who is hired to fill a regular, established position and who *has not yet completed the probationary period of employment*." Ex. 4 at Section 3.1(G) (emphasis added). These employees "may be terminated with or without cause at any time during the probationary period[.]" Ex. 4 at Section 3.1(H).
- **Regular employees**. These people have "completed the probationary period[.]" Ex. 4 at Section 3.1(A). They are "eligible for all rights and benefits provided by the County." *Id*. Additionally, they "shall not be subject to corrective/disciplinary action without just cause." 4.1(M). *See also*, Ex. 4 at Section 4.1(A) ("Disciplinary actions for regular full- and part-time employees are based on a showing of just cause.").
- **Regular employees on position-specific probation**. When "[a] regular employee … [who] already completed one probationary period when originally hired, is promoted, demoted, or transferred to another position" the employee is placed on a twelve month

4

"probationary period." Ex. 4 at Section 3.1(N). If the employee does not complete the probationary period, the employee may be "returned to the former position or a comparable position if such a position is available or an agreed upon subordinate position within the department if such is available. If such a position is not available, the employee will be dismissed." Ex. 4 at Section 3.1(Q).

The Manual exhaustively defines "just cause." *See* Ex. 4 at Sections 4.1 (M) and 4.1(N). Further, the Manual mandates pages of procedural requirements that must be satisfied before just cause can be found. *See e.g.,* Ex. 4 at Section 4.2(A) ("The County shall provide a formal disciplinary procedure for all employees. This formal discipline procedure applies only to the suspension, involuntary demotion, and dismissal of regular employees."); Ex. 4 at Section 4.2(B) (requiring "[w]ritten notification of intent to suspend, demote or dismiss"); Ex. 4 at Section 4.2(F) (creating a right to pre-disciplinary hearing); Ex. 4 at Section 4.1(I) (right to appeal); Ex. 4 at Section 4.1(L) (right to have appeal heard by "unbiased party").

"These restrictions on the government's ability to terminate are sufficient to create a property interest[.]" *Copelin-Brown v. New Mexico State Pers. Off.*, 399 F.3d 1248, 1254 (10th Cir. 2005). So, under the Manual's framework, regular employees—i.e., employees who have completed their initial probationary periods—are entitled to due process. That is not subject to serious dispute. *Cf. Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1253 (10th Cir. 2007) (no property interest because town's policies state "[a]ny employee may be discharged with or without cause, at the sole discretion of and upon notice from the Town Manager.").

Thus, the real issue in this case is not whether employees have a vested property interest in continued employment once they complete their initial probationary periods. They plainly do. Rather, the dispositive question is whether, under the Manual, employees are automatically *divested* of their property interests when they are promoted.

### 2. Reclassification does not strip regular employees of their due process rights.

The February 12 termination notice lays out Defendants' theory of the case: Plaintiff's promotion made him a "probationary employee," and thus terminable at will. Ex. 2. More

5

specifically, the termination notice daisy chains Section 3.1(N), which applies to "regular employee[s] who [are] promoted, demoted, or transferred" to Section 3.1(H), which says "probationary employee[s] may be terminated with or without cause[.]" Ex. 4 at *id*. In other words, the termination notice collapses regular employees serving a probationary period and probational employees serving a probationary period into one homogenous blob. But that move contradicts the Manual's plain text, is inconsistent with basic tenants of statutory construction, and goes against persuasive precedent.

### i.     The plain text of the statute contradicts Defendants' position.

As a starting point, Sections 3.1(H) and 3.1(N) cannot be lumped together because they are talking about different categories of employees. These subsections read in full:

> H. A probationary employee may be terminated with or without cause at any time during the probationary period, and is not entitled the grievance procedure set forth herein, but is entitled to all other county benefits provided herein. Proposed dismissal of a probationary employee must be reviewed with the Human Resources Director.
>
> …
>
> N. A regular employee who is promoted, demoted, or transferred to another position shall be subject to a probationary period. That probationary period shall be twelve (12) months beginning on the date the employee began filling the new position.

Ex. 4 at *id*. In Section 3.1(H), the subject is a *probationary employee*, which is defined by the Manual as someone "hired to fill a regular, established position and who has not yet completed the probationary period of employment." Ex. 4 at Section 3.1(G). But in Section 3.1(N), the subject is a *regular employee*, meaning someone who "has completed the probationary period[.]" Ex. 4 at Section 3.1(A). By the Manual's plain language, a person does not cease to be a regular employee after a promotion—rather, that person is "[a] regular employee … subject to a probationary period." Ex. 4 at Section 3.1(N).

If the County Commission intended to treat everyone serving a probationary period as an initial hire probationary employee, the Manual would say that. But instead, the Manual preserves the distinction between regular employees serving probationary terms (Section 3.1(N)), and initial hire probationary employees (Section 3.1(H)). And that distinction is decisive, given the Manual's

6

promise that the "County shall provide a formal disciplinary procedure for *all … regular employees*." Ex. 4 at Section 4.2(A) (emphasis added).

Defendants' claim that promotion extinguishes a regular employee's due process rights is further undermined by Section 3.1's differential treatment of probationary employees who fail probation and regular employees who fail probation:

> P. If a newly hired employee does not satisfactorily complete the probationary period, the employee may be dismissed. Proposed dismissal of a probationary employee must be reviewed with the Human Resources Director.
>
> Q. If a regular employee, having already completed one probationary period when originally hired, is promoted or transferred and does not satisfactorily complete the probationary period following that change of status, the employee may with the approval of the appropriate department head(s) and the Human Resources Director be returned to the former position or a comparable position if such a position is available or an agreed upon subordinate position within the department if such is available. It will be solely within the discretion of the supervising Assistant County Manager or the County Manager if the employee may return to the former position or a comparable or subordinate position. If such a position is not available, the employee will be dismissed.

Ex. 4 at *id*. Once again, these sections are talking about different things. Section 3.1(P) applies to new hires, i.e. people who have not completed a probationary term. Section 3.1(Q), however, deals with "regular employee[s] … [who have] already completed one probationary period." If the County Commission wanted Section 3.1(P) to apply to everyone, the Manual would say so.

### ii.    Basic canons of statutory interpretation weigh against Defendants.

If "probation" for new hires means the same thing as "probation" for regular employees, there would be no reason for Section 3.1(Q) to exist. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) ("we have cautioned against reading a text in a way that makes part of it redundant."). And along the same lines, if "discretion" to determine "if the employee may return to the former position or a comparable or subordinate position" includes summary dismissal, why list the comparable position and former position as options? And why include the last sentence ("If such a position is not available, the employee will be dismissed") at all?

In short, Defendants' view of Section 3.1(Q) "runs afoul of the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute."

7

*Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quotation marks omitted). Here, the better reading is that Section 3.1(Q) grants the supervising Assistant County Manager and the County Manager discretion to choose between returning the employee to his or her former position, or placing the employee in an equivalent subordinate position. Dismissal only occurs if neither option is available.

Next, when courts are faced with two possible constructions of a statute, there is a presumption against adopting the construction that would retroactively nullify rights. "This is especially true where vested property rights are sought to be forfeited under the statute to be construed." *Magnolia Petroleum Co. v. Carter Oil Co.*, 218 F.2d 1, 6 (10th Cir. 1954).

If Defendants' reading of the Manual is correct, the tenure earned by Plaintiff and all other regular employees is worth far less than they thought. The Manual states that a 12-month probationary period starts whenever "[a] regular employee … is promoted, demoted, or transferred to another position[.]" Ex. 4 at Section 3.1(N). In practice, that would render the Manual's "just cause" requirement for discipline and procedural protections largely meaningless. Should management wish to make someone an employee at-will, it need only move transfer the person to a new job. *See* Ex. 4 at Section 3.3(I) (transfers can be "either voluntarily or involuntarily"); Ex. 4 at Section 3.3(L) (transfers "are not grievable" unless they "involve a demotion or reduction in pay."). Likewise, the Manual's progressive discipline requirements would be compromised if demotion—which starts a new probationary period—could be immediately followed by termination. And finally, the Manual states that "County employees are encouraged to take advantage of promotional opportunities for which they qualify." Ex. 4 at Section 3.1(A). That encouragement would be at best misleading if promotion came with an implied waiver of vested property rights.

### iii. The Court should follow the Ninth Circuit's approach.

Although the Tenth Circuit has yet to rule on whether promotion probation extinguishes a public employee's property rights, the Ninth Circuit has, and its reasoning is persuasive.

In *McGraw v. City of Huntington Beach*, 882 F.2d 384 (9th Cir. 1989), the court was presented with facts that mirror the present matter. The plaintiff, a Huntington Beach Police Department employee, started work "in December of 1981, passed her probationary period in June of 1982, and thus attained the status of a "permanent employee[.]" *Id*. at 386. In May 1984 she was promoted, and "[u]pon promotion … was required to complete another six-month probationary period in her new position[.]" *Id*. During her probationary period, the plaintiff "received written notice from the Huntington Beach City Attorney that she had been terminated[.]" *Id*. (quotation marks omitted). "The City Attorney cited Huntington Beach Personnel Rule 9–49 for the proposition that "probationary employee 'may be rejected at anytime by the department head without cause and without the right of appeal.'" *Id*. at 386-87. The plaintiff then sued, asserting a procedural due process violation under 42 U.S.C. § 1983. *Id*.

The court first acknowledged that "with respect to her promotional appointment, there can be little doubt that McGraw was a 'probationary employee within the meaning of H.B. Personnel Rule 4–37." *Id*. at 388. But the analysis did not end there because:

> It is also undisputed, however, that in June of 1982 appellant successfully completed a period of probation in her permanent Police Clerk position in the HBPD. Having done so, she clearly attained the status of "permanent employee" within the meaning of H.B. Personnel Rule 4–29. There is nothing in the rules to indicate that "permanent" status can be lost once achieved, so long as a person remains an "employee" of the City. McGraw's employment status was, then, at all times between June 1982 and November 1984, that of a "permanent employee."

*Id*. Next, the court addressed the city's argument that it retained *carte blanche* to terminate promoted probationary employees, like the plaintiff:

> In light of the City Council's stated purpose of protecting City employees from dismissal without "just cause" and the City's policy of fostering devotion to the competitive service by encouraging promotional advancement, it is very difficult to accept an argument that the City Council intended "permanent employee" status, once earned, to terminate *sub silentio* upon promotion, once again subjecting the promoted employee to the risks of what is essentially the "at-will" employment status of newly-hired probationary employees.

*Id*. The court then stated:

> The question arises, then, whether appellant could have been both a "permanent" and a "probationary" employee when she was terminated. We believe that it is consistent with the Rules taken as a whole, and with the policies upon which the

9

> City's personnel system is based, to conclude that appellant was a "permanent employee" who was serving out a "promotional probationary period" in a position to which she had received a promotional appointment.

*Id*. The court then rejected a reading of the city's rules that would make a promoted employee terminable at-will during the probationary period:

> If such a reasonable employee read the rules carefully enough, she would recognize that the summary "rejection" mechanism in Rule 9–4 is ambiguous enough to extend to "promotional" as well as to an initial "probationary period." Of course, a reasonable employee in McGraw's circumstances who read Rule 9–4 would know that she was already subjected to and had passed a "probationary period" in her first year of employment. Having developed reasonable expectations of job security after thus attaining "permanent" status, such a reasonable employee could well interpret Rule 9–4 as being inapplicable to her.

*Id*. at 391. Finally, the court held that:

> McGraw was not a mere probationary employee. She had successfully passed one period of probation in the HBPD, and attained "permanent employee" status in the City's competitive service. A permanent City employee who was subject, as was McGraw, to a promotional probationary period, moreover, could legitimately claim on the basis of the Personnel Rules promulgated by the City of Huntington Beach to have developed and retained reasonable expectations of continued employment, at least to continued employment in the position from which they had been promoted. We conclude that McGraw had a constitutionally protected property interest, and that absent an adequate defense or immunity, appellees deprived her of that property interest without due process of law.

*Id*. at 392.

Here, the facts are indistinguishable from those in *McGraw*. Indeed, they are almost identical. Same "just cause" protections for employees who complete initial probationary periods, same assertion by the defendant that those protections are washed away *sub silentio* upon promotion. Huntington Beach's policies—like the Manual—even encourage employees to take advantage of promotional opportunities. *McGraw*'s reasoning is sound. The Court should follow it and hold that Lea County's regular employees are not divested of their due process protections upon promotion.

### 3. Plaintiff possessed a protected due process interest.

Based on a straightforward application of the Manual, Plaintiff is entitled to summary judgment. Everyone agrees he completed the initial 12-month probationary period and thus became a regular employee who could only be fired for just cause. Further, Lea County has had

an open corrections officer position since August 2024. *See* Ex. 3. There is no reason why Plaintiff could not have been transferred to his prior position, as Section 3.1(Q) required. He "was a [regular employee] who was serving out a 'promotional probationary period' in a position to which [he] had received a promotional appointment." *McGraw* 882 F.2d at 388. As a matter of law, he was not subject to summary termination.

### B. Plaintiff was Denied Procedural Due Process.

The second prong of a procedural due process claim is whether the plaintiff was afforded an appropriate level of process. That requirement is plainly satisfied.

It has long been the law that, "at a minimum … deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 313 (1950). *See also*, *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) ("Procedural due process requires a pretermination hearing where liberty or property interests protected by the Fourteenth Amendment are implicated.").

Here, Plaintiff was not provided with *any* of the extensive protections he was due under the Manual. He was not provided with notice or an opportunity to be heard. There is no argument that constitutional minimums were satisfied.

Nor can Defendants argue that exigent circumstances existed that excused them from affording Plaintiff due process. Plaintiff was placed on administrative leave on January 27—whatever threat his continued employment may have caused, that threat was already neutralized. *See* Ex. 1. If Defendants could afford to wait until February 12 to fire Plaintiff—which they did—they cannot seriously claim an emergency existed.

This motion is based only on the violation of Plaintiff's right to procedural due process. Whether Plaintiff's deserved to be fired is beside the point. If Plaintiff's conducted warranted termination, Defendants could have provided notice, held a brief pre-disciplinary hearing, and then reached the same outcome. Due process would not have impeded Defendants' ability to act—it would merely have required them to follow the procedures they chose to bypass.

11

## V. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Plaintiff on the issue of liability.

Respectfully submitted,

WGLA, LLP

*/s/Benjamin Gubernick*
BENJAMIN GUBERNICK
717 Texas Ave., Suite 1200
Houston, TX 77002
(346) 394-8056
ben@wglawllp.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing pleading was served on opposing counsel of record on this 16th day of January 2026 via electronic mail and CM/ECF:

*/s/Benjamin Gubernick*
BENJAMIN GUBERNICK
