IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KEVIN CERVANTES,

    Plaintiff,                              No. 2:25-cv-00534-GJF-JHR

LEA COUNTY BOARD
OF COUNTY COMMISSIONERS,
MARK GALLEGOS,

    Defendants.

### PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 25)

Plaintiff Kevin Cervantes ("Plaintiff"), through undersigned counsel, files this reply to Defendants Lea County Board of County Commissioners (the "Board") and Mark Gallegos' ("Gallegos") (collectively, "Defendants") opposition to Plaintiff's motion for partial summary judgment (Dkt. 25, the "Opposition" or "Def. Opp.").

The Opposition fails to identify any disputed issues of material fact and fails to rebut Plaintiff's entitlement to summary judgment as a matter of law. So, Plaintiff's motion should be granted.

**A. No Material Facts are Disputed.**

To start with, the essential facts of this case are deemed admitted. Plaintiff's motion put forward 11 factual assertions, all of which were supported by record citations. *See* Dkt. 24 at 2-3. The Opposition failed

1

to respond to any of them. Rather, Defendants merely asked that "[a]ny distinctions between the Answer … and Plaintiff's listed facts … be construed as characterizations and argument." Def. Opp. at 2. Yet the Opposition fails to identify even one such "distinction[]." That is insufficient to create a factual dispute. *See* D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

### B. Defendants' "Plain Language" Argument Lacks Merit.

The Opposition asserts that the "plain language of Lea County's personnel manual clearly supports" the conclusion that "Plaintiff was a probationary employee who was not entitled to any additional process[.]" Def. Opp. at 1. And elsewhere, Defendants characterize their actions as "clearly allowed" and insist the Manual's "language could not be any more clear." *Id.* at 3. But behind the Opposition's hyperbole the emperor has no clothes.

Defendants rely on the second to last sentence in Section 3.1(Q): "It will solely be within the discretion of the County Manager if the employee may return to the former position or a comparable or subordinate position." More specifically, Defendants contend that the word "may" does not refer to discretion to choose between "return to the former position or a comparable or subordinate position[.]" Rather, the Opposition interprets "may" to mean discretion to decide whether employment continues *at all*.

For sure, "may" does not mean the same thing as "will." And the Court should interpret Section 3.1(Q) in a way that respects the difference. Yet even with that consideration in mind, Defendants' argument still fails. Section 3.1(Q) uses "may" in the second to last sentence instead of "will" because the last sentence of Section 3.1(Q) states "[i]f such a position is not available, the employee *will* be dismissed." (Emphasis added). Put differently, "return to the former position or a comparable or subordinate position" is *contingent* on the existence of a vacant position—it would make no sense to use the word "shall" or "will."

By contrast, the discretion to choose between "return to the former position or a comparable or subordinate position" *always* rests with the supervising Assistant County Manager or the County Manager. There is no contingent event which can shift that discretion to *someone else*. That is why Section 3.1(Q) says "[i]t *will* solely be within the discretion of the Assistant County Manager or the County Manager[.]" *See also, State v. Guerra*, 2001-NMCA-031, ¶ 14 ("Where the terms 'shall' and 'may' have been juxtaposed in the same statute, ordinarily it must be concluded that the legislature was aware of and intended different meanings.").

Had the County Commission substituted "will" for "may" in Section 3.1(Q), the result would have been untenable. If a promoted employee failed probation and a vacancy did not exist, the second to last sentence of 3.1(Q) would force Lea County to somehow create one. Moreover,

3

3.1(Q)'s last sentence would *also require Lea County to dismiss the employee*. By using "may," the Manual avoids these impossible and conflicting mandates.

## C. Defendants Fail to Explain how a "Regular Employee" can be Terminated Without a Just Cause Finding.

The Opposition's central thesis is that that Section 3.1(Q) "does not provide promoted probationary employees with a right to a demotion to a previous or otherwise unfilled position." Def. Mot. at 3. Implicit in Defendants' reasoning is the assumption that anyone serving a probationary period must be a probationary employee. As the Opposition puts it, "[t]he personnel manual does not create a special category of 'promoted probationary' employees who are entitled to special process or action." *Id*. at 1. But the Manual does exactly that. It calls them "regular employees."

Per the Manual, a "probationary employee" is one who "has not yet completed the probationary period of employment." Section 3.1(G). Conversely, a "regular employee" is one who has "completed the probationary period[.]" Section 3.1(A).

By its plain terms, Section 3.1(Q) applies only to "a *regular employee*, having already completed one probationary period when originally hired, … [who] does not satisfactorily complete the probationary period following that change of status[.]" *Id*. Logically, that

excludes anyone who meets Section 3.1(G)'s definition of "probationary employee."

That makes sense. If Section 3.1(H) governs promoted employees, Section 3.1(Q) serves no independent function. Courts do not construe statutes or contracts in a manner that renders provisions meaningless. *See State v. Javier M.*, 2001-NMSC-030, ¶ 32 (stating that a construction that renders a portion of a statute superfluous is "inconsistent with the rules of statutory interpretation").

And more fundamentally, Defendants' theory of the case requires the Court to accept that a 'regular employee' ceases to be a regular employee upon promotion or transfer. That result flies in the face of the Manual's robust protections for tenured employees, an inconsistency the Opposition fails to explain, much less resolve. Instead, Defendants merely pretend the problem does not exist by claiming "[t]here is no dispute that [Plaintiff] was a probationary employee following his promotion[.]" Def. Mot. at 3.

Defendants' view cannot be reconciled with the Manual. When Plaintiff completed his initial probationary term, he no longer met the criteria for "probationary employee." From that point on, he was a regular employee. That is why when he was promoted, he became a regular employee *serving a probationary term*, the exact category of employees covered Section 3.1(Q). Thus, the only things Defendants were permitted to do *without* notice and hearing were: (1) return Plaintiff to his old

position; (2) move him to a comparable subordinate position; or (3) terminate him *provided no positions were available*. For any other disciplinary measures, Defendants were required to provide Plaintiff with the same protections granted to all other regular employees. It is that simple.

### D. The Opposition Fails to Distinguish *McGraw*.

The Opposition's treatment of case law is similarly unpersuasive. As discussed in Plaintiff's motion, *McGraw v. City of Huntington Beach*, 882 F.2d 384 (9th Cir. 1989), provides a persuasive analytical framework for resolving this dispute. Notably, the Opposition does not engage with *McGraw*'s reasoning. Instead, Defendants brush off *McGraw* on the grounds that it "arises out of California and applies California law." Def. Opp. at 2.

However, the Opposition fails to identify *even one* relevant difference between the Manual and the Huntington Beach Personnel Rules, which were at issue in *McGraw*. Moreover, a broad spectrum of courts outside California have discussed *McGraw*, and none have disagreed with its reasoning. *See e.g.*, *Nix v. Elmore Cnty.*, 158 Idaho 310, 318-19 (2015); *Rushing v. SAIF Corp.*, 223 Or. App. 665, 672–73 (2008); *Lowe v. City of Appleton*, 184 Wis. 2d 404 at fn. 2 (Ct. App. 1994) ("Our analysis … is consistent with *McGraw*.").

The Opposition does cite several cases for the proposition that, under New Mexico law, "probationary employees have no protected

6

property interest in continued employment and can be terminated without process." Def. Opp. at 2. But that argument is ultimately a self-own, because California has the same rule. *McGraw*, 882 F.2d at 389 (collecting cases). That is why in *Palm v. Los Angeles Dep't of Water & Power*, 889 F.3d 1081 (9th Cir. 2018), the court held that an employee on promotion-specific probation does not have a property interest in their promoted position. *Id.* at 1087 ("unlike Palm, McGraw was terminated from *both* her probationary position *and* her permanent position." (Emphasis original)).

### E. The Opposition's Policy Arguments Rest on False Premises and were Rejected by the Supreme Court.

Finally, the Opposition argues that "practically speaking," Defendants had to forgo due process. Def. Mot. at 4. According to Defendants, that is because following the Manual's disciplinary procedures would have "exposed Lea County to potentially significant liability[.]" *Id.*

But that is a classic straw man argument. At no time in this lawsuit has Plaintiff "contend[ed] that he should have been allowed to guard the inmates he had been placed with." *Id.* To reiterate: this case is about *procedural* due process, not substantive due process. Plaintiff does not dispute Defendants were entitled to do what they *initially* did after the incident, namely place him on leave and bar him from the detention center. The Supreme Court expressly held that suspension pending

7

hearing is constitutionally permissible. *Gilbert v. Homar*, 520 U.S. 924, 932 (1997). Indeed, the Supreme Court has pointed to suspension or administrative leave pending hearing as the correct remedy for Defendants' concerns: "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544-45 (1985).

Plaintiff had been suspended for almost two weeks before Defendants summarily terminated him. The problems the Opposition complains about had already been avoided. Whether or not notice and hearing would have eventually resulted in termination is not the point. Due process is owed to the guilty and the innocent alike. Accordingly, Plaintiff is entitled to summary judgment on the issue of liability as a matter of law.

### F. Conclusion

For the foregoing reasons Plaintiff's motion should be granted.

Respectfully submitted,

WGLA, LLP

 */s/Benjamin Gubernick*
Benjamin Gubernick
717 Texas Ave., Suite 1200
Houston, TX 77002

(346) 394-8056
ben@wglawllp.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing pleading was served on opposing counsel of record on this 13th day of February 2026 via CM/ECF:

*/s/Benjamin Gubernick*
BENJAMIN GUBERNICK