**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**Before the Honorable Gregory J. Fouratt**
**United States Magistrate Judge**

**Clerk's Minutes**

**Civ. No. 25-534 GJF/JHR**

*Cervantes v. Lea County Board of County Comm'rs, et al.*

**Date of Hearing: June 9, 2026**
*(recorded via Zoom)*

| | |
|---|---|
| **Attorney for Plaintiff**: | Benjamin Gubernick |
| **Attorney for Defendants:** | Benjamin Young |
| **Proceedings**: | Motions Hearing |
| *Start Time*: | 9:58 a.m. |
| *Stop Time*: | 11:21 a.m. |
| **Total Time**: | **1 hour 23 minutes** |
| **Clerk**: | AEM |

**Notes:**

- The Court indicated that it would hear argument on the two fully briefed cross-motions for summary judgment, beginning with Defendants, turning then to Plaintiff, and finally giving each side a chance for rebuttal in support of their respective motions.
- The Court advised that the hearing was being audio recorded on the Court's Liberty system and that an audio recording could be requested from the Clerk's Office so that the parties could have it transcribed.

**Exchange with Mr. Young (10:01:40 – 10:29:31):**
- The Court asked Mr. Young whether, if Defendants prevail on Plaintiff's federal claim, the remaining state claim should be remanded to state court.
    - Mr. Young responded that the Court need not decide the state claim if Defendants prevail on the federal claim.
- The Court inquired whether Lea County detention officers are unionized.
    - Mr. Young responded in the negative.
- The Court posed a hypothetical: If Plaintiff was not promoted from his position as a line detention officer and was accused of the same conduct of which he was accused in

this case, what process would he be entitled to before he could be disciplined, including by termination?

- o Mr. Young responded that, according to the Lea County Policies and Procedures Manual ("Manual"), that hypothetical individual would be classified as a regular employee, placed on administrative leave, receive a recommendation from his supervisor for disciplinary action, and have a right to grieve that recommendation.
- The Court asked whether, under the Manual, a regular employee not on probationary status could be terminated without a pre-termination hearing.
  - o Mr. Young responded that he was unaware of conditions under which a regular *non-probationary* employee would not be entitled to a pre-termination hearing.
- The Court asked Mr. Young to identify the provision of the Manual on which Defendants relies for the proposition that Plaintiff was not entitled to *any* process.
  - o Mr. Young referred the Court to § 3.1(G), (N), and (Q).
- Noting that Defendants' interpretation of the Manual could disincentivize employees from seeking promotions because they would lose protections enjoyed by non-probationary public employees, the Court asked why they would pursue promotions.
  - o Mr. Young noted that it is not automatic that a probationary employee will be terminated, arguing that there is a discretionary opportunity for demotion if an employee does not satisfactorily complete their probationary period.
  - o Mr. Young argued that, after an infraction, the County Manager has the discretion to demote if a position is available. He added that, here, no position was "available" because the County cannot move a detention officer who engaged in the conduct that Plaintiff engaged into the position of detention officer.
- The Court asked what would stop a warden with a problem employee from promoting or transferring that employee, in lieu of engaging in the process outlined in § 4.2 of the Manual, to take advantage of the 12-month probationary period during which time the employee could be terminated without cause.
  - o Mr. Young suggested that the County Manager and Assistant County Manager have a role in determining whether proposed disciplinary action should result in termination, demotion, or transfer.
- The Court asked whether, under the provisions of the Manual, "probationary employee" and "regular employee on probationary status" define two different groups of people.
  - o Mr. Young argued that there is no distinction in the process available to the two groups under the provisions of the Manual.
- The Court asked whether Defendants referenced § 3.1(Q) in their briefing.
  - o Mr. Young suggested that Kelly Livingston was referencing § 3.1(Q) in her declaration (Dkt. No. 22, Ex. A) and noted that Defendants quoted from § 3.1(Q) in their reply brief.
- Observing that § 3.1(Q) appears to require *some* process or consideration by the Department Head, Human Resources Director, and County Manager if an employee fails to successfully complete their post-promotion probation, the Court asked whether Plaintiff received the process contemplated by that provision.

- o Mr. Young suggested that § 3.1(Q) is not a due process right of which an employee can avail themselves but instead contemplates discretionary review by a supervisor and by the County Manager or Assistant County Manager as to whether they believe placing a given employee in one of the categories of positions specified is in the best interest of the County
- The Court asked what evidence exists in the record that the County Manager, Administrator, or the Human Resources Director were aware of § 3.1(Q).
  - o Mr. Young responded that it is a provision of the County's Manual.
- The Court asked whether there was any statement in Plaintiff's termination notice (Dkt. No. 24, Ex. 2) to the effect that County officials considered the options available under § 3.1(Q) and elected not to move Plaintiff into a different position.
  - o Mr. Young responded in the negative.
- The Court asked whether there was evidence in the record that any of the County officials/employees identified in § 3.1(Q) considered whether to return Plaintiff to his former position of detention officer.
  - o Mr. Young conceded that there was no evidence to that effect because Plaintiff's conduct meant that the transfers mentioned in § 3.1(Q) were not available.
- The Court asked why it should read the term "available" in § 3.1(Q) to mean "suitable" or "appropriate" rather than "vacant and funded."
  - o Mr. Young referred the Court to the language of § 3.1(Q), which provides that an employee "may . . . be returned to the former position or a comparable position *if such a position is available* or an agreed upon subordinate position within the department *if such is available*" and argued that there is no *available* position into which the County can place an employee of a detention center who has been observed committing an assault and battery of another person.
- The Court asked whether Defendants dispute that at all relevant times there were vacant, funded detention officer positions at the County.
  - o Mr. Young indicated that Defendants do not dispute Plaintiff's evidence to that effect.
- The Court asked Mr. Young to frame the clearly established inquiry of the qualified immunity analysis.
  - o Mr. Young suggested that the proper inquiry is whether there is precedent from the Tenth Circuit or the United States Supreme Court indicating that it was a violation of law for Defendant Gallegos to recommend Plaintiff's termination.
- The Court asked Mr. Young to frame the inquiry assuming Defendant Gallegos was the terminating official.
  - o Mr. Young indicated that it would be essentially the same inquiry – whether there was authority indicating that it was clearly established Defendant Gallegos could not *terminate* Plaintiff based on the language in the Manual.
- The Court asked why *Loudermill* and *Gilbert* do not constitute clearly established law to defeat qualified immunity.
  - o Mr. Young argued that the cases are distinguishable because they did not involve a policy with a provision that addresses an employee who was promoted and entered into a new probationary period.

3

- Observing that the County put Plaintiff on administrative leave for a few weeks, the Court asked why it didn't extend his administrative leave to proceed through the modest steps outlined in the Manual for a regular employee's pre-termination process.
  - o Mr. Young argued that doing so would have vitiated the language of the Manual and if the County later attempted to enforce the Manual as written, there could be a potential equal protection claim.
- The Court asked why a policy which provides that a promoted employee loses due process protections for one year does not itself violate due process.
  - o Mr. Young responded that in the instant case the parties are, in part, seeking to obtain from the Court a determination as to whether the Manual is enforceable as written.
- The Court asked whether Defendants are suggesting that it does not matter whether the policy itself violates due process if there is no case suggesting that it does.
  - o Mr. Young argued that it is not clearly established that the policy itself or the actions of the County fail to pass constitutional muster.
- The Court asked how often a County employee fails to successfully complete a post-promotion probationary period and is therefore terminated.
  - o Mr. Young responded that he was not aware of any circumstance where that had occurred.
- The Court asked whether the apparent factual dispute as to whether Defendant Gallegos only recommended termination or was the terminating official is a critical one.
  - o Mr. Young suggested that it is important to assess whether an individual making a *recommendation* based on the language of the Manual is entitled to qualified immunity.
- The Court asked who the County contends was the decision-making official with respect to Plaintiff's termination.
  - o Mr. Young suggested that § 3.1(Q) gives the County Manager or Assistant County Manager discretion to make that decision.
- The Court asked whether it is Defendants' position that the Complaint is deficient because it did not name the County Manager.
  - o Mr. Young responded that the Complaint is potentially deficient to the extent it seeks to hold an individual actor liable.
- The Court asked whether Defendants' position would be different if Defendant Gallegos was the terminating official.
  - o Mr. Young responded that the Couty would still be seeking qualified immunity for the deciding individual.

**Exchange with Mr. Gubernick: (10:29:31 – 11:08:15):**
- The Court asked what, from Plaintiff's perspective, the County should have done differently.
  - o Mr. Gubernick responded that the County should have suspended Plaintiff without pay (which they did) *and* afforded the minimal due process that *Loudermill* requires before making a disciplinary decision.
- The Court asked how Plaintiff harmonizes § 4.2(b) of the policy (i.e., due process for regular employees) with § 3.1(Q) (i.e., policy applicable to regular employees who

have already completed one probationary period and are then promoted and subject to another probationary period).

- o Mr. Gubernick suggested that the Court should follow the approach of the Ninth Circuit in *McGraw*, which is to say that an employee can be a regular employee for purposes of employment and still be on probation for a promoted position.
- o Mr. Gubernick suggested that had the County determined that Plaintiff failed to satisfy his probationary promotion, he could not challenge a decision by the County to send him back to his former position.

- The Court asked whether *McGraw* has gained any traction in the Tenth Circuit in the 37 years since it was decided.
  - o Mr. Gubernick indicated that a few district court cases have cited *McGraw* and that he was not aware of any case criticizing its reasoning.
- The Court asked whether Mr. Gubernick was suggesting that *McGraw* clearly established the law in the Tenth Circuit with respect to the process that is due to a post-promotion probationary employee.
  - o Mr. Gubernick argued that to the extent Defendants are arguing that there is an exception to *Loudermill* for employees serving a probationary period, *McGraw* is helpful because it closes such a loophole.
  - o Mr. Gubernick further argued that Defendants are suggesting there is a carve out in *Loudermill* for extra bad conduct without anything to support such a contention.
- The Court asked Mr. Gubernick to address § 3.1(Q), which provides an avenue for a promoted employee who does not satisfactorily complete his probation to continue his or her employment at a lower grade if the Administrator, HR Director, and County Manager agree.
  - o Mr. Gubernick emphasized that the County terminated (not demoted) Plaintiff from all employment without notice or hearing, arguing that § 3.1(Q) did not permit it to take this action *unless there were no positions available*. He added that the County concedes there were vacant positions.
- The Court asked whether Plaintiff takes the view that if the only process afforded a post-promotion probationary employee is the process outlined in § 3.1(Q) that provision of the Manual does not pass constitutional muster.
  - o Mr. Gubernick responded in the negative, conceding that if a County employee's promotion is not working out, that *promotion* is evaluated under an at-will employment standard.
  - o Mr. Gubernick insisted, however, that regular employees remain entitled to due process before termination.
- Noting that § 3.1(Q) is silent as to due process rights beyond those the provision itself provides, the Court asked why it should adopt Plaintiff's view of those rights.
  - o Mr. Gubernick argued that § 3.1(Q) is *not* silent on due process rights because it refers to "regular employees" who happen to be serving a probationary period.
  - o Mr. Gubernick conceded that someone who flunks probation is at risk of being terminated if no other position is available.
- The Court asked Mr. Gubernick to address the situation when there is no agreement between the individuals identified in § 3.1(Q) that an employee should be allowed to return to his or her former position.

- o Mr. Gubernick argued that the discretion afforded to the County Manager and Assistant County Manager is between the former position and a subordinate position.
  - o Mr. Gubernick insisted that the County Manager and Assistant County Manager do not also have discretion to terminate the employee, because this would be inconsistent with the process afforded regular employees.
- The Court asked Mr. Gubernick whether it is Plaintiff's position that § 3.1(Q) gives the three identified decisionmakers discretion *only* to decide whether a probationary flunk-out may return to his or her former job or a different job and does *not* give them discretion as to whether an employee covered by § 3.1(Q) may be terminated for any other reason.
  - o Mr. Gubernick responded in the affirmative, adding that this is why the last sentence of § 3.1(Q) is not discretionary.
- Assuming agreement with Plaintiff's view of § 3.1(Q), the Court asked what authority would have put Defendant Gallegos on notice that recommending termination would violate the 14th Amendment.
  - o Mr. Gubernick referred the Court to *Loudermill*, *Gilbert*, and the presumption against waiver of vested rights.
- Noting that *Loudermill* did not involve a person serving a post-promotion probation or provisions like those found in the subject Manual, the Court asked how *Loudermill* could clearly establish the law in this case.
  - o Insisting that Plaintiff was a "regular employee" who could only be fired for "just cause," Mr. Gubernick argued that *Loudermill* makes clear that such employees are entitled to minimal due process.
  - o Mr. Gubernick conceded that it would *not* be a clearly established violation of Plaintiff's due process rights if he was removed from his sergeant job but not terminated.
  - o Mr. Gubernick further argued that an employer should not be able to insert ambiguity into an employment manual with respect to employees' due process rights and treat it as an exception or loophole to *Loudermill*.
  - o Mr. Gubernick emphasized that the Manual provides that a "regular employee" cannot be fired without "just cause," which is the same phraseology that *Loudermill* found to create a due process right.
  - o Mr. Gubernick conceded that there is one instance when the Manual permits termination without due process: when there is no position available under § 3.1(Q), though he insisted that this was not the case here.
  - o Mr. Gubernick argued that, under Tenth Circuit precedent, to invoke an exception to a bedrock right, the exception itself must be clearly established. He added that, here, there is no clearly established exception for employees on probation for a promotion.
  - o Mr. Gubernick referred the Court to *Mascorro v. Billings,* 656 F.3d 1198, 1209 (10th Cir. 2011), for the proposition that when a bedrock principle of law is at issue, the burden is on the *defendant* to show that there is an applicable exception to that bedrock principle that is clearly established.

- The Court asked Mr. Gubernick to identify the property interest in continued employment that Plaintiff possessed while he was on probationary status as a sergeant with the County.
  - Mr. Gubernick responded that Plaintiff had a property interest in being returned to his former job or a comparable job *and* a constitutional interest in a pre-termination hearing.
- The Court asked whether Plaintiff's property interest was in either his detention officer position or a comparable one.
  - Mr. Gubernick responded in the affirmative, citing *McGraw*.
- The Court asked Mr. Gubernick to describe the significance of the factual dispute as to whether Defendant Gallegos was the terminating official or merely the official who recommended termination.
  - Mr. Gubernick suggested the dispute is irrelevant, arguing that there was no admissible summary judgment evidence that any other individual was the terminating official.
- The Court asked whether Plaintiff conducted any discovery on the issue of how the County made the decision to terminate him.
  - Mr. Gubernick explained that at the Rule 16 initial scheduling conference the parties acknowledged that the issues in the case were issues of law and that discovery was unnecessary.
  - Mr. Gubernick added that the first time Defendants suggested Gallegos was not the terminating official was in their opposition to Plaintiff's Motion for Summary Judgment.
- The Court asked whether Mr. Gubernick was concerned that Plaintiff should have named the County Manager as a co-defendant in his Complaint.
  - Mr. Gubernick suggested that if Defendant Gallegos is the wrong defendant, Plaintiff could still amend, as he remains within the statute of limitations.
  - Mr. Gubernick clarified that he saw no *evidence* of a pleading problem, only speculation.
- The Court asked Mr. Gubernick to address the consequence if the Court determines there is a factual dispute as to whether Defendant Gallegos merely recommended Plaintiff's termination or terminated him.
  - Mr. Gubernick indicated that it might be a question for the jury but that the easiest solution would be for the Court to first reopen discovery and, if a dispute remained after discovery, then present the issue to a jury.
- Noting that discovery is not ordinarily reopened to address late-arriving problems, the Court asked why it should do so in this case.
  - Mr. Gubernick emphasized that he did not accept the premise that there is a factual dispute without evidence that the terminating official was anyone other than Defendant Gallegos.
  - He added that he would hope that any pleading problem, if there is one, could be remedied through discussion between counsel, with an agreement as to an amended complaint.
- Posing a hypothetical, the Court asked whether, if Defendant Gallegos remained the sole defendant in Count I and the factfinder determined that Defendant Gallegos only *recommended* Plaintiff's termination, *Loudermill* would constitute clearly established

7

law that even the *recommendation* of Plaintiff's termination would violate his due process rights.

- o Mr. Gubernick conceded that Defendant Gallegos could potentially be entitled to qualified immunity under such circumstances but argued that there was no evidence before the Court that Defendant Gallegos was not the decisionmaker.
- o Mr. Gubernick acknowledged that there may be facts that affect the qualified immunity analysis of which Plaintiff was not apprised.

- Emphasizing that discovery is closed, the Court suggested that if a factual dispute remains as to Defendant Gallegos's role in Plaintiff's termination, a special interrogatory to the jury may be necessary to resolve that dispute. The Court asked whether there is a legal distinction based on the outcome of that question.
  - o Mr. Gubernick acknowledged that there could potentially be a legal distinction in the qualified immunity analysis.
  - o Mr. Gubernick explained that Plaintiff was looking to hold accountable the individual who *caused* his termination and that if Defendant Gallegos merely *recommended* the termination, it could have legal consequences.
  - o Mr. Gubernick insisted that both sides agreed at the Rule 16 initial scheduling conference that this was a one-legal-issue case that could be decided on the pleadings, but he acknowledged that this may have been an optimistic prediction.
  - o Mr. Gubernick emphasized that the issue as to Defendant Gallegos's role was only raised tangentially in Defendants' opposition to Plaintiff's motion for summary judgment.

- The Court observed that it would be nice to have the question of Defendant Gallegos's role in Plaintiff's termination settled because it may be of legal consequence to the qualified immunity analysis.

**Exchange with Mr. Young (11:08:16 – 11:17:20):**

- The Court asked Mr. Young to respond to Plaintiff's position that inclusion of the phrase "regular employee" in § 3.1(Q) places the employee to which that provision applies under the protective umbrella of *Loudermill*.
  - o Mr. Young responded that Defendants disagree with that position because § 3.1(Q) applies to an employee who was *once* a "regular employee" but who became a "probationary employee" again when promoted or transferred and was, as such, subject to the at-will provisions of the Manual.

- The Court asked Mr. Young to respond to Plaintiff's argument that § 3.1(Q) does not permit the County to terminate an employee identified in that provision for any reason other than lack of available positions, whether a former job, comparable job, or subordinate job.
  - o Mr. Young argued that the permissive language in § 3.1(Q) suggests that an employee who falls under that provision may be terminated, as a probationary employee, for reasons other than lack of availability.

- The Court observed that Defendants were asking the word "may" to do a lot of work in § 3.1(Q).

- The Court asked Mr. Young to respond to Plaintiff's position that *Loudermill* begins and ends the clearly established inquiry because it provides that employees who can only be terminated only for just cause have a right to a pretermination hearing.
  - o  Mr. Young argued that when there is distinct language in the applicable policy or manual, as here, *Loudermill* does not control.
  - o  Mr. Young noted that even Plaintiff is willing to carve out an exception to *Loudermill* on the issue of a demotion under § 3.1(Q).
  - o  Mr. Young acknowledged that the language could be written more clearly and less ambiguously.
- The Court asked whether there is a fact question that prevents granting summary judgment if the Court concludes that the clearly established inquiry is affected by Defendant Gallegos's role in Plaintiff's termination.
  - o  Mr. Young argued that the Court must undergo the same qualified immunity analysis whether Defendant Gallegos was the decider or the recommender because the specific provisions of the Manual drive the clearly established analysis.
  - o  Mr. Young argued that if Ms. Livingston, the Assistant County Manager, was the named defendant, she would be making the same arguments under the clearly established prong of the qualified immunity analysis.
  - o  Mr. Young noted that Ms. Livingston's declaration (Dkt. No. 22, Ex. A ¶ 10) indicates that she oversaw Plaintiff's termination process and that Defendant Gallegos *recommended* Plaintiff's termination.
  - o  Mr. Young further noted that Plaintiff's termination notice (Dkt. No. 24, Ex. 2) indicates that "the County" was terminating Plaintiff, with Defendant Gallegos signing the notice.
- In response to the Court's invitation to present additional argument or to emphasize any points, Mr. Young argued that application of § 3.1(Q) of the Manual, not Plaintiff's egregious conduct, is what takes the case outside of *Loudermill*.

**Exchange with Mr. Gubernick (11:17:22 – 11:18:51):**
- Noting that Defendants emphasize the "may" v. "shall" language in § 3.1(Q), Mr. Gubernick argued that if § 3.1(Q) used "shall" or "will" rather than "may," those portions of § 3.1(Q) would conflict with the final sentence of the provision, which provides that "[i]f such a position is not available the employee *will* be dismissed."
- Mr. Gubernick insisted that § 3.1(Q) uses the permissive "may" language because placing an employee in the other positions mentioned in the provision is contingent on another position being *available*.

**Court's closing remarks:**
- The Court observed that although the briefing is not voluminous, the case involves more complex legal questions than anticipated and, as a result, the Court will get the parties a decision when it can.
- In the meantime, the Court noted that if Defendants prevail on summary judgment, the federal claim goes away, Plaintiff will have the opportunity to appeal that decision to the Tenth Circuit and will resume litigating the state claim in state court, where he will

have the ability to name the County Manager or other official and litigate in a forum that can be hostile to summary judgment.

- Conversely, the Court observed that if Plaintiff survives Defendants' motion for summary judgment based on a dispute of fact, a jury may need to resolve the factual dispute underlying the qualified immunity analysis, which would result in additional delay before Plaintiff could obtain the relief he is seeking.

- There being nothing further, the Court adjourned.  (11:21:37)
- (*Please refer to the recording of the hearing for additional information.*)